## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OWEN MARFIA, | : | Civil No. 1:22-CV-02029 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GETTYSBURG AREA SCHOOL | : | |
| DISTRICT, *et al.*, | : | |
| | : | |
| Defendants. | | Judge Jennifer P. Wilson |

## **MEMORANDUM**

This case involves serious sexual abuse suffered by Plaintiff Owen Marfia ("Plaintiff") at the hands of his adopted father, Defendant Vincent Marfia ("Marfia"). While the facts of this case are tragic, the court is not tasked with determining Marfia's accountability for these actions at this juncture. Rather, the court is considering whether Defendant Gettysburg Area School District ("GASD"), who was Marfia's employer during a relevant time period, is liable for Title IX violations and negligence claims. The court is not currently deciding whether Plaintiff suffered a harm or was wronged, but whether GASD can be held accountable for any wrongdoing suffered by Plaintiff. The central theme for Plaintiff's theory of liability against GASD is that GASD should have known that Plaintiff would suffer sexual abuse at the hands of Marfia based on the knowledge that Marfia having favorite students and hindsight opinions that Marfia was "creepy." While hindsight may be 20/20, the court must look at the facts of record

to determine what the GASD individuals involved knew or should have known at the time of the abuse.

Before the court are cross-motions for summary judgment, one filed by Defendant GASD, Doc. 54, and one filed by Plaintiff, Doc. 57.[1]  In support of its motion, GASD argues that there are insufficient facts of record for a reasonable jury to decide in favor of Plaintiff on his Title IX and negligence claims.  In his motion, Plaintiff argues that, if this case proceeds to the jury, GASD should be held severally and jointly liable on the state law claims against Defendant Marfia. For the reasons that follow, the court will grant GASD's motion for summary judgment.  Because granting summary judgment in favor of GASD means that GASD bears no liability in this case, the court will deny Plaintiff's motion as moot.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]**

Defendant Marfia began teaching seventh grade full time in GASD in 1999. (Doc. 55, ¶ 20.)  Prior to his employment with GASD, Marfia had been employed

---

[1] Plaintiff and Defendant Adams County settled the case before summary judgment.  (Doc. 74.) The remaining claims in the amended complaint not addressed by this opinion are one count of assault and battery and one count of intentional infliction of emotion distress against Defendant Vincent Marfia.  Neither Plaintiff, nor Marfia, have moved for summary judgment on these counts.

[2] Many of the facts in this case are not disputed.  Where facts are not disputed, the court cites to GASD's statement of material facts with the implicit recognition that Plaintiff admitted these facts in his response to GASD's statement.  (Doc. 55.)  The court will note disputed facts. Further, Plaintiff provided additional facts that are supported by the record.  The court will consider those facts because GASD did not dispute these additional facts and they are supported by the court's independent review of the record.  Of course, the court draws all reasonable inferences in favor of the non-movant.  *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012).

as a caseworker with Adams County Children and Youth Services ("Adams County CYS"). (*Id.* ¶ 15.) Marfia first came in contact with GASD when he was a student teacher in 1997. (*Id.* ¶ 17.) Marfia was then hired as a long-term substitute in 1998, and successfully obtained all certifications required for being a teacher, including a criminal history check and child abuse record check. (*Id.* ¶¶ 17, 18.)

Plaintiff was born on October 31, 2000, to Scott Merryman and Angela Preston. (Doc. 55, ¶¶ 1–3.) Plaintiff has three siblings who share the same parents: Heather Merryman, Keevan Merryman, and Charley Merryman. (*Id.* ¶ 4.) Scott Merryman married Dayna Merryman in approximately 2004 to 2005. (*Id.* ¶ 6.) While Scott and Dayna were married, they lived with Scott's four children, noted above, and Dayna's two children from a prior relationship, Norma Redman and Grace Redman. (*Id.* ¶ 8.) Around 2006, Plaintiff's first or second grade year, Scott Merryman was incarcerated for sexually assaulting Plaintiff's sisters, leading to Plaintiff and his three biological siblings going to live with their mother. (*Id.* ¶¶ 9, 10.) Shortly thereafter, the children were placed in foster care, due to conditions of neglect while in the custody of their biological mother, and, in 2007, the four children were removed from foster care and placed with Dayna Merryman, their stepmother. (*Id.* ¶¶ 11, 12.) At this time, Plaintiff began attending GASD, specifically, Franklin Township Elementary School, and was enrolled there for his second and third grade years, 2008 through 2010. (*Id.* ¶ 13, 14.)

### A. Marfia Enters Plaintiff's Life

While enrolled as an elementary student at Franklin Township Elementary School, Plaintiff's brother Keevan was a seventh-grade student in Marfia's class. (*Id.* ¶ 35.)  Marfia has also taught several of Plaintiff's siblings and stepsiblings, specifically Norma, Grace, and Charley.  (*Id.* ¶ 33.)  Plaintiff himself never had Marfia as a teacher.  (*Id.* ¶ 35.)  While Keevan was a student in Marfia's class, Marfia offered to be a pseudo-father figure to Keevan and, with the approval and participation of Dayna Merryman, developed a connection with the larger Merryman family, such that the children were frequently at Marfia's home with Marfia, his wife, and his children.  (*Id.* ¶¶ 35–37.)  The relationship between Marfia and the Merryman children rose to the level that Dayna gave Marfia and his wife permission to pick up and drop off the children at school and gave the children permission to stay overnight at the Marfia's house.  (*Id.* ¶ 38.)

During Plaintiff's third-grade year, Marfia would occasionally bring Plaintiff to school on special occasions, such as take your child to work day or field day, as well as "give him hugs on GASD property[,] and bring him to Devil's Den with other parents, students, or family members."  (*Id.* ¶ 39.)  Plaintiff testified that whenever he was in the middle school with Marfia, Marfia would hold his hand. (Doc. 65, ¶ 123.)  Plaintiff also testified that Marfia would attend his parent teacher conferences, even though Marfia was not his legal guardian at that time.

(*Id.* ¶ 124.)  Teachers who observed Plaintiff, an elementary school student, at the middle school with Marfia understood that Plaintiff's stepmother had given permission for Plaintiff to be at the middle school with Marfia.  (Doc. 55, ¶ 40.)

By the end of his third-grade year, Plaintiff was spending "most nights of the week" at Marfia's home, often sleeping in bed with him and his biological children.  (*Id.* ¶¶ 41, 42.)  Marfia also bathed Plaintiff and his biological sons and touched Plaintiff's genitals while bathing him.  (*Id.* ¶ 44; Doc. 55-1, p. 23.)[3] Plaintiff never reported this behavior to GASD, and Plaintiff's guardian, Dayna Merryman, was aware that Plaintiff stayed overnight at the home, and that Marfia bathed him.  (Doc. 55, ¶¶ 41–46.)  During this time period, Marfia once "brushed his hand against the front of Plaintiff's pants, purportedly by accident."  (*Id.* ¶ 47.) Marfia disclosed the incident to Dayna, and Dayna, Marfia, and Plaintiff discussed the incident.  (*Id.* ¶ 48.)  This incident was never reported to GASD.  (*Id.* ¶ 49.) There was no other sexual contact between Marfia and Plaintiff while Plaintiff was a student at GASD or on GASD property.  (*Id.* ¶¶ 50, 51.)

In between Plaintiff's third and fourth grade year, Dayna gave Marfia and his wife guardianship over Plaintiff, believing it to be in Plaintiff's best interest, and Plaintiff and his sister Heather began staying with the Marfia family full time. (*Id.* ¶¶ 55, 56.)  At that point, Plaintiff began attending Littlestown Area School

---

[3] For ease of reference, the court uses the page number contained in the CM/ECF header.

District.  (*Id.* ¶ 57.)  This same summer, while he was no longer a student at GASD, Plaintiff went on summer vacation with the Marfias.  While on vacation, Plaintiff awoke to Marfia "touching him inappropriately[,]" but Plaintiff never reported this conduct.  (*Id.* ¶¶ 53, 54.)

In February 2011, Marfia and his wife obtained sole physical custody of both Plaintiff and Heather Merryman, and shared legal custody of both children with Dayna Merryman.  (*Id.* ¶¶ 58, 59.)  Starting in 2012, Marfia began pursuing a private adoption of Plaintiff and Heather.  (*Id.* ¶ 61.)  Dayna Merryman began harboring concerns about Marfia at this time and engaged a private investigator to investigate him; however, she never made any report about Marfia to law enforcement.  (*Id.* ¶¶ 62, 63.)  The private investigator hired by Dayna Merryman to investigate Marfia prior to his adoption of Plaintiff interviewed a former colleague of Marfia's at Adams County CYS who stated that "Marfia was unprofessional and inappropriate in his relationship with minors[,]" he had had a foster child stay overnight at his home while employed by CYS, and that it gave her "the creeps" that Marfia was a teacher.  (Doc. 65, ¶¶ 105–08.)  Adams County CYS also did a home study prior to the finalization of the adoption. (Doc. 55, ¶ 64.)  The Adams County Court of Common Pleas Orphans' court formalized Plaintiff's adoption by the Marfias on March 7, 2013.  (*Id.* ¶ 65.)

When Plaintiff began staying full time with the Marfias, sometime in 2010, Marfia began sexually abusing Plaintiff on an almost daily basis, exclusively within the Marfia home.  (*Id.* ¶¶ 66, 67.)  The abuse continued for approximately three years until Plaintiff was physically strong enough to fight Marfia off.  (*Id.* ¶ 68.)  Plaintiff did not report this abuse until his senior year of high school in 2019, at which time, the person he reported to took no action.  (*Id.* ¶¶69, 71.)  Around the same time that he reported the abuse, Plaintiff moved out of the Marfia home.  (*Id.* ¶ 70.)

**B. GASD's Response to Reports of Misconduct About Marfia**

On April 16, 2019, the Pennsylvania Department of Human Services received a ChildLine report of suspected child abuse by Marfia, unrelated to Plaintiff.  (*Id.* ¶¶ 77, 82.)  On April 18, 2019, GASD's superintendent, Dr. Jason Perrin, informed Marfia via letter that Marfia was being placed on paid administrative leave relating to an investigation by Adams County Children and Youth Services.  (*Id.* ¶ 78.)  On April 23, 2019, Dr. Perrin filed an educator misconduct complaint with the Pennsylvania Department of Education ("DOE") related to investigations by both Adams County CYS and the Pennsylvania State Police ("PSP").  (*Id.* ¶ 79.)  On June 5, 2019, DOE informed the GASD School Board Secretary that DOE had received an educator misconduct complaint about Marfia that alleged:

> numerous staff members [had] witnessed inappropriate conduct
> between Marfia and male students[,] Marfia [had] been seen having
> long embraces with students, and rubbing students backs and hands[,]
> Marfia [had] been taking students to the movies, allowed a student to
> spend the night at his home (which he claimed to have guardianship of),
> and continued to have contact with a male student via his son's Xbox
> account, even after the student's mother forbid them to have contact.

(*Id.* ¶¶ 80, 81; Doc. 55-20, p. 56.)  DOE found that the "allegations in the complaint [were] legally sufficient to warrant discipline."  (Doc. 55-20, p. 56.)  GASD acknowledged receipt of the letter from DOE, opened an investigation, and then deferred the investigation to Adams County CYS and PSP because those entities had already started investigations.  (Doc. 55, ¶¶ 84, 85.)  GASD provided documents requested by DOE.  (*Id.* ¶ 86.)  Adams County CYS later informed GASD that its investigation into Marfia was closed as unfounded.  (*Id.* ¶ 88.)  GASD concluded that the conduct violated Board Policy No. 824 and placed a disciplinary letter in Marfia's file on July 29, 2019.  (*Id.*)

On August 12, 2019, DOE informed GASD's Board Secretary it had received another educator misconduct complaint alleging Marfia was the subject of a child abuse investigation by both Adams County CYS and PSP.  (*Id.* ¶ 89.)  The DOE then began a full investigation of the allegations contained in the June 5, 2019 letter and GASD agreed to fully cooperate.  (*Id.* ¶¶ 90, 91.)  On August 22, 2019, the GASD Board informed Marfia that it had approved transferring him to a

second-grade teacher position in Franklin Township Elementary School. (Doc. 55-20, p. 47.)

### C. Criminal Investigation and Charges and Subsequent Events

Plaintiff eventually reported Marfia's sexual abuse to law enforcement on December 30, 2020. (Doc. 55, ¶ 72.) It is undisputed that Plaintiff did not report Marfia's sexual abuse to GASD. (*Id.* ¶ 73.) On December 31, 2020, Dr. Perrin informed Marfia that criminal charges had been filed against him and he was placed on paid administrative leave. (Doc. 55-20, p. 45.) Marfia was charged with one count of involuntary deviate sexual intercourse with a child, one count of involuntary deviate sexual intercourse with a person less than sixteen years of age, two counts of incest, one count of indecent assault of a person less than sixteen years of age, one count of indecent assault of a person less than thirteen years of age, two counts of corruption of minors, and one count of corruption of minors–defendant age 18 or above. (Doc. 55, ¶ 94.)

Plaintiff has provided excerpts of reports from PSP's investigation into Marfia in which teachers and students stated they were not surprised he had been arrested for sexual abuse due to how he behaved with students. (*Id.* ¶¶131–35.) For example, one student who had Marfia as a teacher in the 2009-2010 school year told PSP that he was not surprised at Marfia's arrest because "there was always a running joke amongst his friends that [Marfia] was a pedophile." (*Id.* ¶

131.)  Another student who had Marfia around 2010 told PSP that she was not surprised at Marfia's arrest because of how he acted with students.  (*Id.* ¶ 132.)  An additional student who had Marfia in 2009 told PSP Marfia was too friendly with students and that Marfia had students over to his house, hugged students in front of the class, had asked the interviewed student to stay at his home, and Marfia had his favorite students' desks near to Marfia's.  (*Id.* ¶ 133.)  An intern who worked in Marfia's classroom in 2019 stated Marfia was always hugging the children and allowed a male student to sit at his desk with him.  (*Id.* ¶ 134.)

The final interview excerpt provided by Plaintiff was of a teacher at Franklin Township Elementary, who worked with Marfia during his time there, who stated that Marfia had one student who stayed after school with Marfia and went home with him, to the extent that the student had a dresser at Marfia's home.  (*Id.* ¶ 135.)  Further, the teacher stated Marfia was upset when the student was no longer allowed to spend time with him.  (*Id.*)  The teacher also heard that Marfia was having lunch with this student once the student had entered middle school, Marfia had the student call him "dad" and kissed him on the forehead at school, and Marfia would use his son's Xbox to talk to the child.  (*Id.*)

On March 9, 2021, the DOE informed GASD's Board Secretary that it had received an educator misconduct complaint relating to the criminal charges against Marfia and that it would be conducting a full investigation.  (*Id.* ¶¶ 95, 96.)  GASD

agreed to cooperate with the investigation and provided requested documents.
(*Id.* ¶ 97.)  On March 23, 2021, DOE filed a notice of charges against Marfia with
the Commonwealth of Pennsylvania's Professional Standards and Practices
Commission, seeking immediate suspension of Marfia's teaching certificate and
employment eligibility.  (*Id.* ¶ 98.)  On May 10, 2021, the Professional Standards
and Practices Commission suspended Marfia's teaching certificate, and Marfia was
placed on administrative leave without pay.  (*Id.* ¶ 99.)  On June 11, 2021, the
Professional Standards and Practices Commission confirmed the suspension of
Marfia's teaching certificate and employment eligibility.  (*Id.* ¶ 100.)

Marfia resigned from teaching at GASD on June 14, 2021.  (*Id.* ¶ 101.)
Marfia pleaded guilty to two first-degree misdemeanor counts of corruption of
minors and was sentenced to five years' probation with standard sex-offender
conditions on April 4, 2022.[4]  (*Id.* ¶ 102; Doc. 55-20, pp. 9, 10.)  On June 22, 2022,
the DOE moved for summary judgment at the Professional Standards and Practices
commission, seeking revocation of Marfia's teaching certificate and employment
eligibility due to his conviction on the criminal charges.  (Doc. 55, ¶ 103.)

---

[4] During his deposition, Marfia invoked his Fifth Amendment right against self-incrimination to
every question asked by counsel, except for whether he was married, which he answered in the
affirmative.  (Doc. 65, ¶ 136.)

### D. Marfia's Reputation at GASD

Defendant Marfia's reputation at GASD throughout his employment is disputed. GASD contends that Marfia "generally had a positive reputation amongst students." (*Id.* ¶ 21.) However, Plaintiff points to Pennsylvania State Police investigation notes in the investigation of the 2020 criminal charges against Marfia, which show one student noting to the officer that he was not surprised at Marfia's later arrest "'because there was always a running joke amongst his friends that [Marfia] was a pedophile.'" (Doc. 65, ¶ 21 (citing Doc. 65-6.).)

Marfia and another GASD teacher, Scott Snyder, took students who demonstrated good character on off campus outings, such as to Devil's Den or bowling. (Doc. 55, ¶ 22.) The trips always had more than one adult chaperone, were known by GASD, and students had to obtain parent permission before attending. (*Id.* ¶ 23.) GASD contends there is no evidence that Marfia abused any student or behaved inappropriately during any of these trips. (*Id.* ¶ 24.) However, Plaintiff notes that middle school teacher Sherri Yingling participated in one of these trips early in her career and testified that the trip made her uncomfortable because Marfia only had a group of boys with him. (Doc. 65, ¶ 24 (citing Doc. 55-13, p. 25)). At some point during Marfia's career, Yingling refused to attend a parent-teacher conference because Marfia insisted on attending even though he was not the student's parent or guardian. (Doc. 65, ¶ 112.) Yingling also testified

that she "thought it was possible" that Marfia was sexually attracted to students at the middle school.  (*Id.* ¶ 113.)

Other teachers observed that Marfia had "favorite students" who he favored over others, selecting them for field trips or placing the students' desks close to his. (Doc. 55, ¶ 25.)  There is no evidence that Marfia sexually abused any "favorite student."  (*Id.* ¶ 26.)  GASD contends that no teacher testified to receiving a complaint about Marfia from a student, parent, or other teacher, nor did any teacher testify to Marfia engaging in "reportable sexual or inappropriate conduct on or outside of GASD property."  (*Id.* ¶ 27.)  Plaintiff disputes this fact and notes that Roxann Smith, a paraprofessional who aided a student in Marfia's class in 2003, "routinely witnessed Vince Marfia straddling students in his classroom." (Doc. 65, ¶ 27.)  Smith testified that she never reported the behavior because she "just didn't know what to do maybe."  (*Id.* ¶ 116.)  Smith testified that it was "known in the school" that "Marfia lik[ed] the boys . . . ."  (*Id.* ¶ 118.)  Smith also testified that during her time in Marfia's classroom, "she believed Vince was sexually attracted to his male students."  (*Id.* ¶ 122.)  Teacher Jennifer Riddlemoser also testified that Marfia was known for having favorites, spending time with those favorites in school and out of school, and she reported to the administration that she was uncomfortable with Marfia placing his favorite students' desks near his desk.  (*Id.* ¶¶ 129, 130.)

### E.  Training Received by GASD Teachers

It is disputed whether GASD teachers receiving training or had discussions relating to "child abuse, child sexual abuse, and appropriate teacher/student boundaries[.]"  (Doc. 55, ¶ 28; Doc. 65, ¶ 28.)  GASD contends it "at all times has followed applicable state and federal requirements, including utilizing resources provided by the Pennsylvania Department of Education."  (Doc. 55, ¶ 28.)  Plaintiff contends that multiple teachers testified they did not remember the training they received at the operative time period, nor did they remember training on boundary policies.  (Doc. 65, ¶ 28.)

### F.  Procedural History of This Lawsuit

Plaintiff initiated this lawsuit on December 21, 2022.  (Doc. 1.)  Plaintiff filed an amended complaint on March 10, 2023, and GASD filed a motion to dismiss the amended complaint.  (Docs. 18, 20.)  Defendants Adams County and Marfia answered the amended complaint.  (Docs. 22, 23.)  After full briefing, the court granted in part and denied in part GASD's motion.  (Docs. 31, 32.)  Relevant to the instant motion, the court denied the motion to dismiss Plaintiff's Title IX claim, finding that, at the motion to dismiss stage, Plaintiff had pleaded allegations sufficient to state a Title IX claim.  (Doc. 31, pp. 7–13.)  The court granted the motion to dismiss Plaintiff's negligence claim because Plaintiff had failed to allege

which section of 42 PA. CON. STAT. § 5551(7) applied to his case, and also failed to allege any facts that any sexual abuse occurred on GASD property.  (*Id.* at 15.)

Plaintiff filed the operative amended complaint on December 23, 2023. (Doc. 33.)  The amended complaint alleges one count of violation of Title IX against GASD, one count of negligence, gross negligence, and recklessness against GASD, one count of negligence, gross negligence, and recklessness against Adams County, one count of assault and battery against Marfia, and one count of intentional infliction of emotional distress against Marfia.  (*Id.*)  GASD and Marfia answered the amended complaint separately on January 5, 2025.  (Docs. 34, 36.) Adams County answered on January 22, 2024.  (Doc. 38.)  Counsel for Adams County and Plaintiff later represented to the court that they had settled the case. (Doc. 50.)  This settlement was confirmed by the filing of a stipulation of dismissal, and Adams County was dismissed from the case on May 22, 2025. (Doc. 74.)  GASD filed a motion for summary judgment and accompanying papers on January 30, 2025.  (Docs. 54, 55, 56.)  Plaintiff also filed a motion for summary judgment and supporting papers on January 30, 2025.  (Docs. 57, 58, 59.)  Both motions have been fully briefed and are ripe for disposition.

## JURISDICTION AND VENUE

This court has jurisdiction under 28 U.S.C. §§ 1331 because Plaintiff brings claims arising under a federal statute.  This court also has supplemental jurisdiction

over state law tort claims under 28 U.S.C. § 1367 because the state law claims are sufficiently related to the federal claims.  Venue is appropriate under 28 U.S.C. § 1391 because all actions or omissions alleged occurred in the Middle District of Pennsylvania.

## STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary."  *Id.*  "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case."  *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter."  *Anderson*, 477 U.S. at 249.  Instead, the

court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

GASD argues that it is entitled to summary judgment on Plaintiff's Title IX claim because the undisputed facts fail to establish a Title IX claim. Specifically, GASD argues that Plaintiff fails to establish a Title IX claim because no appropriate person at GASD was aware of Marfia's sexual abuse of Plaintiff, GASD was not deliberately indifferent to Marfia's inappropriate conduct, and the sexual harassment of Plaintiff was not under GASD's substantial control. (Doc. 56, p. 6.) GASD also argues it is entitled to summary judgment on Plaintiff's negligence[5] claim because Plaintiff has failed to produce facts establishing negligence. (*Id.*)

Plaintiff's motion for summary judgment argues that Pennsylvania's Fair Share Act is not applicable to the instant case, meaning that GASD is jointly and severally liable for any damages against Marfia, if Plaintiff is successful at trial. (Doc. 58, p. 2.) Because both motions discuss discrete issues, the court will discuss each motion separately, beginning with GASD's motion.

---

[5] GASD additionally argued that it is entitled to summary judgment on Plaintiff's gross negligence and recklessness claims. (Doc. 56, pp. 24, 25.) Plaintiff consents to entry of summary judgment in favor of GASD on his gross negligence and recklessness claims. (Doc. 66, p. 25 n.3.) Accordingly, the court will enter judgment in GASD's favor on Plaintiff's gross negligence and recklessness claims.

### A. GASD's Motion for Summary Judgment

As noted above, GASD argues that there are three different bases for granting summary judgment in its favor on Plaintiff's Title IX claim: 1) an appropriate person at GASD did not have actual knowledge of Marfia posing a substantial danger to Plaintiff; 2) GASD was not deliberately indifferent to any of Marfia's inappropriate conduct; and 3) the sexual abuse suffered by Plaintiff did not occur while Plaintiff was a student at GASD or on GASD property.  (Doc. 56, pp. 7, 8.)  GASD also argues that it is entitled to summary judgment on Plaintiff's negligence claim.  (*Id.* at 16–23.)  The court will address each argument in turn.

### 1.  GASD is entitled to summary judgment on Plaintiff's Title IX claim.

Because it is dispositive, the court will first address whether GASD had actual knowledge of Marfia sexually harassing Plaintiff.  Title IX seeks to ensure that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."  20 U.S.C. § 1681(a).  Sexual harassment is a form of discrimination on the basis of sex.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986).  To prove a claim for a violation of Title IX and hold a school district liable when a teacher sexually harasses a student, a plaintiff must show that "a recipient of federal education funds" was "deliberately indifferent to known acts of sexual harassment by a

teacher" and this deliberate indifference caused them to be subject to discrimination. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 641–43 (1999) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998)). A school district "causes" the student to be subject to discrimination when "the recipient [school district] exercises substantial control over both the harasser and the context in which the known harassment occurs." *Davis*, 526 U.S. at 645. "[T]hese conditions are satisfied most easily and most obviously when the offender is an agent of the recipient." *Id.*; *see also Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 343–44 (W.D. Pa. 2011). Finally, a plaintiff must show "the harassment deprived the plaintiff of access to educational opportunities or benefits." *Doe v. Pennridge Sch. Dist.*, 413 F. Supp. 3d 393, 402 (E.D. Pa. 2019).

In order to prove that a school district had actual notice of the sexual harassment, a plaintiff must show that an "'appropriate person' knows of sex-based discrimination and refuses to remedy the situation . . . ." *Douglas*, 836 F. Supp. 2d at 347. An appropriate person is "at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Gebser*, 524 U.S. at 290. "A school principal and superintendent will ordinarily be appropriate persons for purposes of Title IX." *Kobrick v. Stevens*, No. 3:13-CV-2865, 2017 WL 3839946, at *16 (M.D. Pa. Sept. 1, 2017), *subsequently aff'd*, 763 F. App'x 216 (3d Cir. 2019). Moreover, "[t]he authority to supervise a teacher and to

investigate a complaint of misconduct implies the authority to initiate corrective measures such as reporting her findings to her superior or to the appropriate school board official at the very least." *Warren rex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163, 173 (3d Cir. 2002).

In determining whether a person is an "appropriate person," the court must keep in mind that "Title IX is intended as protection for the student[ ]" rather than "to *punish* acts of discrimination[.]" *Id.* at 170 (emphasis in original). Thus, in creating an implied private right of action, the Supreme Court was concerned with not "interfer[ing] with the opportunities for voluntary compliance built into the statutory scheme of Title IX, and administrative remedies that Congress included in the statutory scheme." *Id.* Accordingly, not every employee of a school is an "appropriate person," rather, "[h]olding a school district responsible for actions of a principal fixes responsibility at sufficiently high level to afford the recipient of Title IX funds an opportunity to respond to claims of discrimination before funds are jeopardized by a teacher's conduct." *Id.*

Further, the "appropriate person" must have actual knowledge of the abuse. *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 362 (3d Cir. 2005). "Actual knowledge exists if the school was aware of facts that indicated 'sufficiently substantial danger to students.'" *Kobrick*, 2017 WL 3839946 at *16 (citing *Bostic*, 418 F.3d at 361)). Knowledge does not require absolute certainty but does require "more

21

than mere awareness of a risk of harm . . . ." *Id.*  In the context of harassment of a

student by a teacher, the appropriate person must have "'actual notice' of the

relationship itself, and be deliberately indifferent to the situation, before the

relevant school district can be subjected to Title IX liability." *Douglas*, 836 F.

Supp. 2d at 346–47.

GASD argues that it did not have actual knowledge of Marfia's sexual

harassment of Plaintiff because Plaintiff never reported the sexual abuse to anyone

at GASD.  (Doc. 56, p. 9.)  GASD further argues that the sexual abuse occurred at

the Marfia home while Plaintiff was a student at Littlestown Area School District

and no sexual contact occurred while Plaintiff was a GASD student or on GASD

property.  (*Id.*)  GASD argues that contact between Plaintiff and Marfia at school,

including Marfia bringing him to school events or outings and holding his hand or

giving him hugs was understood by the teachers and the school district to be with

Plaintiff's stepmother's consent and approval and consistent with the family

relationship between the Marfias and the Merrymans.  (*Id.* at 9, 10.)  GASD also

relies on its actions in 2019 when it affirmatively learned of sexual harassment

allegations against Marfia and took swift action.  (*Id.* at 11.)

Plaintiff argues that GASD had actual knowledge of "facts indicating that

Marfia was a sufficiently substantial danger to students, including Plaintiff."  (Doc.

66, p. 11.)  Plaintiff points to the fact that Marfia's "predilection for young boys

was an open fact in the district[,]" referencing the students and teachers who spoke
to PSP in 2020 in connection with PSP's criminal investigation of Marfia and
commented how they were not surprised at criminal charges against Marfia due to
their perceptions of his behavior towards students. (*Id.* at 11–13.) Plaintiff also
points to the deposition testimony of Jennifer Riddlemoser, Sherri Yingling, and
Roxann Smith who testified that Marfia was known for having favorites and
spending time with them outside of school, that Marfia often being with groups of
boys or being in close proximity to boys was uncomfortable, and their speculation
that Marfia may have been sexually attracted to his students. (*Id.* at 14–16.)
Plaintiff argues these individuals were "appropriate persons" because they could
have "initiated corrective measures" by reporting their misgivings to the
administration. (*Id.* at 17) (citing *Warren ex rel Good v. Reading Sch. Dist.*, 278
F.3d 163, 173 (3d Cir. 2002)).

Moreover, Plaintiff contest GASD's contention that the sexual abuse did not
begin until Plaintiff was no longer a student by noting the instance when Marfia
touched Plaintiff's underwear in bed and would bathe Plaintiff and touch his
genitals in the course of bathing him. (*Id.* at 17, 18.) Plaintiff also points to the
fact that he, as an elementary school student, would be at the middle school with
Marfia, holding his hand and hugging him, and Marfia would attend Plaintiff's

parent teacher's conference and no one at GASD questioned this behavior.  (*Id.* at 16.)

Finally, Plaintiff argues that Marfia choosing to invoke his Fifth Amendment right at his deposition in response to the question of whether he groomed Plaintiff at GASD or whether Marfia had sexual contact with Plaintiff while Plaintiff was a student at GASD warrants an adverse inference that Marfia admitted to grooming Plaintiff at GASD and having sexual contact with Plaintiff while he was a student at GASD.  (*Id.* at 18–20.)[6]

In reply, GASD disputes that the intern who reported to PSP, Ms. Riddlemoser, Ms. Yingling, or Ms. Smith were "appropriate persons" under the law because these individuals did not have "authority to investigate Defendant Marfia's misconduct or report the findings of any such investigation to a superior or the school board."  (Doc. 69, pp. 5, 6.)  GASD contends that interpreting *Warren* to mean any teacher, due to the fact that teachers are mandated reporters, is an appropriate person "would render nearly every employee of a school district an appropriate person under Title IX."  (*Id.*)  Such a broad scope, GASD argues, would vitiate the purpose of the "appropriate person inquiry" which is meant only

---

[6] The court does not address this argument because it is not relevant to the basis on which the court decides the motion.  Even if it is admitted that Marfia abused Plaintiff while he was a student at GASD, this would not overcome the fact that GASD did not have actual notice of this abuse.  *Gebser*, 524 U.S. at 590.

to hold a school district accountable for the actions of a person at a sufficiently high level of authority so that a school district can "respond to claims of discrimination before funds are jeopardized by a teacher's conduct." (*Id.* at 6) (citing *Warren*, 278 F.3d at 170; *Gebser*, 524 U.S. at 290–91.) GASD also notes that in *Warren*, the Third Circuit held that, on the record before it, a guidance counselor was not an "appropriate person" because the guidance counselor was not "cloaked with sufficient authority to be a 'responsible person' during any time relevant here." *Warren*, 278 F.3d at 173.

Looking at the record and taking all inferences in favor of Plaintiff as the non-movant, there is not sufficient evidence in the record such that a reasonable jury could find that an appropriate person at GASD was aware that Plaintiff was being sexually abused by Marfia. First, the "appropriate persons" proffered by Plaintiff, Riddlemoser, Yingling, and Smith, are not, in fact, "appropriate persons" under the law because there is no evidence in the record that these individuals had any authority to investigate inappropriate conduct or institute corrective measures.[7] Both Riddlemoser and Yingling were teachers at GASD. (Doc. 65, ¶¶ 109, 130). There is no evidence in the record as to their authority to take corrective measures

---

[7] Plaintiff also argues that Jennifer Espinoza, an intern in Marfia's classroom in 2019, relayed to the PSP that Marfia was always giving hugs to his students. Espinoza is not an appropriate person because she was an intern in Marfia's class well after the facts of Plaintiff's abuse. Plaintiff further relies on teacher Forrest Haffey's statement to PSP about Marfia's actions in the 2018-2019 school year. Again, any conduct allegedly known by Haffey is well after the time period that Plaintiff was a student at GASD.

against a fellow teacher.  Smith was paraprofessional who was in Marfia's

classroom for a single year, and there is similarly no evidence in the record on her

authority to take corrective measures or investigate complaints.  (*Id.* ¶ 114.)

Although these individuals may have had a responsibility to report inappropriate

conduct by virtue of being mandated reporters, there was no evidence in the record

verifying this fact.  Moreover, this fact alone, even if proven, is insufficient to find

that these individuals themselves had the authority to take any corrective measure

with respect to Marfia and potentially end the discrimination against Plaintiff.  The

individuals at GASD who unquestionably had that authority–the principal and

superintendent–both testified that they do not remember complaints about Marfia

or remember the student at issue.  (Litten deposition Doc. 55-9, pp. 29, 31; Reddig

deposition Doc. 55-10, pp. 12, 13, 15.)

Further, Plaintiff has not presented case law that a person is an "appropriate

person" solely based on their status as a mandated reporter.  Rather, Plaintiff cites

to *Warren* as support for this argument.  However, the facts and holding of *Warren*

do not support this argument.  In *Warren*, the Third Circuit determined, on the

record before it, that a school principal was an appropriate person because she had

"[t]he authority to supervise a teacher and to investigate a complaint of misconduct

[which] implies the authority to initiate corrective measures such as reporting her

findings to her superior or to the appropriate school board official at the very

least." 278 F.3d at 173.  However, the Third Circuit declined to hold that a guidance counselor, who was *de facto* the principal when the principal was not present, was an "appropriate person" on the facts before the court, because it was not apparent on the record that the principal was absent during the relevant time. *Id.*  Here, there is no evidence that any of the individuals who testified about having concerns about Marfia had any authority to investigate any misconduct at the school.  If a report had actually been made by these individuals to an "appropriate person," it may have led to corrective measures against Marfia.  But, there is no evidence showing that such a report was made.

Plaintiff's other main argument for GASD having actual notice of sexual harassment against him is that it was an "open secret" that Mafia preferred young boys.  However, the record in this case shows that the "open secret" consisted of some individuals within GASD being aware that Marfia had "favorites," had students sit close to his desk, and took his "favorites" on an out of school trip with another teacher.  These known facts are insufficient to put GASD on notice that Marfia could potentially pose a threat to sexually harass his students and/or Plaintiff.  *Gebser*, 524 U.S. at 291.

In *Gebser*, the Supreme Court fashioned the implied right of action for a Title IX claim and expressly declined to attach liability on constructive notice alone.  524 U.S. at 285.  In applying the newly fashioned standard to the case

27

before it, the Supreme Court held that a principal being aware of "complaints from parents of other students charging only that [a teacher] had made inappropriate comments during class . . . was plainly insufficient to alert the principal to the possibility that Waldrop was involved in a sexual relationship with a student." *Id.* at 291.

Here, both the principal and superintendent testified that they were unaware of any complaints against Marfia.  (Litten Doc. 55-9, pp. 29, 31; Reddig Doc. 55-10, pp. 12, 13, 15.)  Even if they had been aware of the kinds of concerns that existed contemporaneously, these were merely concerns about Marfia having favorites, putting his students desks next to his, and taking out of school trips with other teachers and students.  As in *Gebser*, these complaints are not sufficient to put GASD on notice that Marfia may be involved in sexually abusing a student.  Therefore, a reasonable jury could not find that an appropriate person at GASD had actual notice of Marfia's sexual harassment of Plaintiff.  Accordingly, GASD is entitled to judgment as a matter of law on the Title IX claim.

### 2.  GASD is entitled to summary judgment on Plaintiff's negligence claim.

The court next turns to Plaintiff's negligence claim.  The Pennsylvania State Torts Claims Act ("PSTCA") "governs the extent to which [a] political subdivision [like GASD] may be held liable in tort."  *Jean v. City of Phila.*, 604 F. Supp. 3d. 271, 274 (E.D. Pa. 2022).  Section 8542(b) contains nine "'negligent acts' which if

committed by a local agency or agency employee, may subject the local agency to liability." *Id.* The subsection relevant to the instant motion is subsection nine, which provides "[c]onduct which constitutes an offense enumerated under section 5551(7) (relating to no limitation applicable) if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence." 42 PA. CON. STAT. § 8542(b)(9). Accordingly, a local agency can be held liable for negligent acts or omissions which caused a plaintiff to be subjected to conduct which constitutes one of the enumerated offenses in 42 PA. CON. STAT. § 5551(7). Section 5551(7) provides:

> An offense under any of the following provisions of 18 Pa.C.S. (relating to crimes and offenses), or a conspiracy or solicitation to commit an offense under any of the following provisions of 18 Pa.C.S. if the offense results from the conspiracy or solicitation, if the victim was under 18 years of age at the time of the offense:
>
> Section 3011(b) (relating to trafficking in individuals).
>
> Section 3012 (relating to involuntary servitude) as it relates to sexual servitude.
>
> Section 3121 (relating to rape).
>
> Section 3122.1 (relating to statutory sexual assault).
>
> Section 3123 (relating to involuntary deviate sexual intercourse).
>
> Section 3124.1 (relating to sexual assault).
>
> Section 3124.2 (relating to institutional sexual assault).
>
> Section 3125 (relating to aggravated indecent assault).

Section 4302 (relating to incest).

GASD concedes that "Marfia's conduct in this matter falls within the conduct enumerated in Section 5551(7)," however, GASD contests that Marfia's conduct resulted from GASD's negligence.  Therefore, the court will determine whether there is evidence in the record from which a reasonable jury could find that GASD was negligent and that such negligence caused Marfia's conduct.

GASD argues that Plaintiff's injury was not foreseeable to GASD because Plaintiff was not a student at GASD when Marfia began sexually abusing him, and there is no evidence that GASD was aware of the sexual abuse perpetrated by Marfia against Plaintiff.  (Doc. 56, pp. 19, 20.)  GASD discounts Marfia's behaviors with other students, such as having favorites or taking students on out of school trips, because it is undisputed that Plaintiff was not a "favorite," there is no evidence that Marfia sexually abused a "favorite," and there were always other adults on the out of school trips.  (*Id.* at 20, 21.)  Finally, GASD argues that GASD teachers had received training on child abuse, GASD never received complaints about Marfia, and no teacher observed Marfia engaging in "reportable sexual or inappropriate conduct on or outside of GASD property."  (*Id.* at 21.)  Ultimately, GASD concludes that "Plaintiff's risk of harm could not have been foreseeable to GASD, and any failure to act by GASD could not have been the proximate cause

of Plaintiff's harm, as he was a non-GASD student who was abused within the

Marfia household, not on GASD property."  (*Id.* at 22.)

GASD further argues that it is unclear whether negligent hiring, supervision,

or training claims are subject to the PSTCA's sexual abuse exception, and

moreover, Plaintiff has not produced evidence that GASD was negligent in hiring,

supervising, or training because there is no evidence GASD was aware of

misconduct prior to hiring Marfia, no evidence Marfia "committed sexual abuse on

district premises such that GASD should have known of the need to stop him, and

there is no evidence of insufficient training in identifying signs of child sexual

abuse."  (*Id.* at 22, 23.)

Plaintiff contends that GASD has conflated foreseeability as to duty and

foreseeability as to proximate cause.  (Doc. 66, p. 24 n.4.)  Regarding

foreseeability as to duty, Plaintiff argues that the court "should define the

foreseeable harm at a general level of abstraction[,]" and concludes that "it is

eminently foreseeable that a school district's failure to properly hire, train, oversee,

and monitor its teachers could lead to its teachers sexually abusing their students."

(*Id.* at 26.)  With respect to foreseeability as to proximate cause, Plaintiff argues

that questions of proximate cause are questions of fact for the jury and "a

reasonable jury could conclude that Plaintiff's sexual abuse at the hands of

Defendant Marfia was foreseeable" because "multiple teachers believed Defendant

Marfia was sexually attracted to his students;" and teachers also knew of Marfia's inappropriate behaviors with students, such as always being with a group of boys. (Doc. 66, p. 28.)  Plaintiff also argues that he can proceed under a negligent hiring, supervision, retention, and training theory because a separate court in this district has recognized such a claim, and he has presented sufficient evidence to support such a claim, such as testimony regarding Marfia's prior employment at Adams County CYS, testimony from GASD teachers as to training they received, and lack of documentation regarding training at GASD between 2008 and 2010.  (*Id.* at 28–32.)

In reply, GASD notes that Plaintiff has "failed to identify a single case in support of the general proposition that a school district's failure to train makes it foreseeable that a teacher will commit sexual abuse against a student."  (Doc. 69, p. 18.)  GASD continues "it strains logic to suggest that teachers are not generally aware that they should refrain from sexually abusing students absent relevant training."  (*Id.*)  GASD further argues that the sexual abuse suffered by Plaintiff was not reasonably foreseeable to GASD because "there has been no evidence presented that Defendant Marfia ever sexually harassed or abused any student of his or that any employee of GASD ever witnessed Defendant Marfia engaging in inappropriate sexual conduct with Plaintiff" during the relevant time period.  (*Id.* at 19.)  GASD notes that Plaintiff has presented only evidence that GASD employees

witnessed Marfia and Plaintiff together and recognized it was with the permission of his legal guardian, or rumors and opinions, which are insufficient to show it was foreseeable to GASD that Marfia would sexually abuse Plaintiff. (*Id.*)

In response to the negligent hiring claim, GASD argues that there is no evidence that Marfia's previous employer, Adams County, terminated Marfia due to concerns of child abuse, and points to Marfia's criminal history certification and child abuse certification showing that there was no known issue with a former employer when Marfia was hired. (*Id.* at 22.) As to the negligent retention claim, GASD argues Plaintiff has not produced evidence that Marfia sexually abused Plaintiff or any other student on GASD property or within GASD's knowledge such that GASD could have been aware it needed to stop Marfia during the relevant time period. (*Id.*) GASD again discounts the testimony of individuals who thought he behaved inappropriately with students, but made no report of their concern. (*Id.* at 22, 23.) Finally, as to the negligent training claim, GASD argues there is no evidence that GASD's training was insufficient because there is no evidence that Marfia abused Plaintiff anywhere other than at the Marfia home. (*Id.* at 23.) GASD argues Plaintiff "cannot establish that more or different training would have led to the discovery and reporting of Defendant Marfia's misconduct." (*Id.*)

The elements of a negligence claim under Pennsylvania law are: 1) "a duty to conform to a certain standard for the protection of others against unreasonable risks; [2] the defendant's failure to conform to that standard; [3] a causal connection between the conduct and the resulting injury; [and 4] actual loss or damage to the plaintiff." *Brewington for Brewington v. City of Phila.*, 199 A.3d 348, 355 (Pa. 2018). To begin, the court must identify and define the scope of the duty GASD owed to Plaintiff. Both parties state conclusions regarding the duty without analysis. For example, GASD contends that "the duty of care owed by a school district to its students extends to 'those risks that are reasonably foreseeable under the circumstances[,]'" and then concludes that "Plaintiff's risk of harm could not have been foreseeable to GASD[,]" essentially due to GASD's lack of knowledge that Marfia was sexually abusing Plaintiff or any student. (Doc. 56, pp. 18-22.) Plaintiff concludes, generally, that "it is eminently foreseeable that a school district's failure to properly hire, train, oversee, and monitor its teachers could lead to its teachers sexually abusing their students." (Doc. 66, p. 26.) GASD replies that "it strains logic to suggest that teachers are not generally aware that they should refrain from sexually abusing students absent relevant training[,]" and notes the lack of evidence regarding Marfia sexually harassing or abusing another student and lack of evidence of GASD employees witnessing Marfia being sexually inappropriate with Plaintiff. (Doc. 69, pp. 18, 19.)

34

In Pennsylvania, "[d]uty, in any given situation, is predicated upon the relationship existing between the parties at the relevant time." *Alumni Ass'n, Deltz Zeta Zeta of Lambda Chi Alpha Fraternity v. Sullivan*, 535 A.2d 1095, 1098 (Pa. Super. 1987). Therefore,

> [Determining] whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

*Althaus ex rel. Althaus v. Cohen*, 756 A.2d 116, 1169 (Pa. 2000).

The question is what duty GASD owed to Plaintiff in the context of this case. To begin, the parties dispute when the sexual abuse began. Plaintiff contends that it began in Plaintiff's third grade year when Plaintiff was staying at the Marfia home and Marfia bathed him and touched his pants while he was sleeping. GASD contends that it began when Marfia obtained guardianship of Plaintiff and Plaintiff was no longer a student at GASD.

During the time period when Marfia bathed Plaintiff and touched his pants while sleeping, the only behavior at the school between Marfia and Plaintiff was that Plaintiff, who was then an elementary school student, would be taken out of school by Marfia and be present in the middle school where Marfia was a teacher. However, there was an established relationship at the time between Marfia and the

Merryman family such that Marfia had the authority to remove Plaintiff from school.

In this specific factual context, where GASD was aware that Marfia was in a close relationship with Plaintiff approved by Plaintiff's family and Marfia was permitted to have extensive contact with the Merryman family, GASD did not owe a duty to Plaintiff for actions that may have occurred during that time period off the school campus. It is undisputed that no sexual abuse occurred on GASD's property. It is also undisputed that once Marfia began abusing Plaintiff consistently, the only connection to GASD was that GASD was Marfia's employer.

No case has been presented by Plaintiff that supports the contention that GASD is liable for actions of its teachers that occurred off campus with a child who was not a student of GASD at the time. Imposing a broad duty on GASD that would render it liable for ensuring the safety of students for all acts that a teacher commits outside of school would involve a difficult policy judgment. Such policy judgments are better made by the legislature. *Feleccia v. Lackawanna College*, 215 A.3d 3, 13 (Pa. 2019). Further, such a standard would require GASD to be liable for risks that it cannot reasonably foresee. While school districts have a duty

regarding students while the students are in their custody,[8] the court declines to extend this duty to the actions of a teacher off campus and with a non-student. GASD only owes protection for foreseeable risks.

For reasons very similar to those discussed in the Title IX discussion above regarding notice, the risk to Plaintiff was not foreseeable by GASD based on the facts known at the time: that Marfia had "favorite" students; saw those students off campus with another teacher present; and placed students' desks close to his. These facts did not put GASD on notice that Marfia was already sexually abusing any of his students or likely to do so in the future. There were no contemporaneous complaints that Marfia sexually abused a student. Any complaints about Marfia's behavior are too vague to say that GASD should have been aware that Marfia would one day sexually abuse a student. Accordingly, the risk of sexual abuse to Plaintiff was not reasonably foreseeable to GASD. As a result, GASD did not owe a duty to Plaintiff to protect him from that risk. Thus, the negligence claim fails as a matter of law.

### i. Negligent Hiring Claim

The parties also dispute whether a negligent hiring claim satisfies the PSTCA's negligence exception such that GASD has waived immunity for a

---

[8] *See Wartluft v. Milton Hershey School and School Trust*, 844 F.App'x 499, 504 (3d Cir. 2021)(citing Restatement (Second) of Torts § 314A (1965)).

negligent hiring claim. However, both parties also discuss whether there is evidence to support the elements of a negligent hiring claim. The court will begin by deciding whether, from the facts of record, a jury could reasonably find a negligent hiring claim.

To prove a negligent hiring claim, a plaintiff must show that an employer "knew or should have known that his employee had a propensity for [sexual abuse] and such employment might create a situation where the [sexual abuse] would harm a third person." *Coath v. Jones*, 419 A.2d 1249, 1250 (Pa. Super. 1980). With respect to what GASD knew at the time, there is not sufficient evidence to show that GASD knew Marfia had the propensity to sexually abuse a child. As discussed, what GASD knew at the time regarding Marfia's "favorites" is insufficient to show that Marfia had a propensity to sexually abuse children.

Regarding what GASD should have known, Plaintiff contends that GASD should have contacted Adams County CYS to learn that there were allegations of Marfia being "creepy" and having a foster child at his house overnight. (Doc. 66, p. 30.) First, these allegations are contained in a report that Dayna Merryman had a private investigator compile and there is no evidence showing GASD was aware of these allegations. Second, there is additionally no evidence that if GASD had inquired of Adams County CYS, the agency would have disclosed this information to GASD. There is also no evidence regarding the reason Marfia's employment

with CYS was terminated.  Moreover, Marfia was able to obtain the necessary

certifications before beginning his employment at GASD.  Accordingly, there is no

evidence in the record for the jury to find that GASD knew or should have known

of Marfia's propensity to sexually abuse children when they hired him, and the

negligent hiring claim fails as a matter of law.

### ii.  Negligent Supervision Claim

To prove a negligent supervision claim, a plaintiff must show an injury

caused by "1) a failure to exercise ordinary care to prevent an intentional harm by

an employee acting outside the scope of his employment, (2) that is committed on

the employer's premises, (3) when the employer knows or has reason to know of

the necessity and ability to control the employee."  *Belmont v. MB Inc. Partners,*

*Inc.*, 708 F.3d 470, 487–88 (3d Cir. 2013).  In this case, there is no evidence that

Marfia sexually abused Plaintiff on GASD property.  Further as discussed, the

behavior that occurred on GASD property, bringing Plaintiff to the middle school

or holding his hand, is too attenuated from the harm that Plaintiff eventually

suffered to support a negligent supervision claim.

### iii. Negligent Training Claim

Finally, regarding the negligent training claim, a plaintiff must show that

GASD "(1) had a duty to train their employees; (2) breached that duty; and (3) the

breach of that duty caused Plaintiff's harm."  *Kaminski v. Mydatt Svcs. Inc.*, No.

2:12-CV-363, 2012 WL 2089741, at *4 (W.D. Pa. June 8, 2012).  GASD argues

Plaintiff has failed to produce evidence that training "with regard to identifying

signs of child sexual abuse caused his abuse, given that the abuse occurred

exclusively off school district grounds, when Plaintiff was a student" in a different

school district.  (Doc. 56, p. 23.)  Plaintiff responds that GASD has produced no

documentation that its teachers received training regarding sexual abuse or

appropriate boundaries between 2008 and 2010.  (Doc. 66, p. 32.)  In reply, GASD

argues that there is "no evidence to suggest that GASD's training was legally

deficient during the relevant time period[,]" and also notes that "Plaintiff cannot

establish that more or different training would have led to the discovery and

reporting of Defendant Marfia's misconduct."  (Doc. 69, p. 23) (citing *Oldham v.*

*Penna. State Univ.*, 2022 WL 1528304, at * 24 (M.D. Pa. May 13, 2022)).  As

above, Marfia's conduct of sexually abusing Plaintiff is too attenuated from the

behaviors observed at GASD such that no reasonable jury could find that GASD's

failure to train its employees caused Plaintiff's sexual abuse.  Accordingly, GASD

is entitled to summary judgment.  In conclusion, GASD is entitled to summary

judgment on the negligence claim in the entirety.

### B. Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment asks the court to find that

Pennsylvania's Fair Share Act, which provides that in certain circumstances "each

defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of that defendant's liability to the amount of liability attributed to all defendants[,]" does not apply to this case, such that GASD and Defendant Marfia would be jointly and severally liable for damages, if a jury at trial found in favor of Plaintiff.  (Doc. 58, p. 2.)  Because GASD is not liable for either the Title IX or negligence claim against it, GASD cannot be jointly or severally liable for Defendant Marfia's actions at all.  As Plaintiff's counsel notes, "[o]f course, if a jury finds GASD 0% liable and Marfia 100% liable, GASD bears no responsibility."  (*Id.* at 5.)  The court has found, as a matter of law, a jury will not be able to find GASD liable.  GASD interprets Plaintiff's motion as arguing that "even were GASD deemed not directly liable to [Plaintiff] in this matter, it may be held liable for damages attributable to Vince Marfia on the basis that GASD and Vince Marfia are joint tortfeasors."  (Doc. 63, p. 1.)  Put simply, GASD and Marfia are not joint tort-feasors because the court has found that there is insufficient evidence to find that GASD committed any tort.  Therefore, GASD cannot be held liable for Marfia's conduct here.  As a result, Plaintiff's motion for summary judgment will be denied.

### C. Supplemental Jurisdiction Over Remaining Claims

The only claims that remain are state law claims against Defendant Marfia. Under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental

jurisdiction since it has "dismissed all claims over which is has original

jurisdiction."  The Third Circuit has held that "where the claim over which the

district court has original jurisdiction is dismissed before the trial, the district court

must decline to decide the pendent state claims unless considerations of judicial

economy, convenience, and fairness to the parties provide an affirmative

justification for doing so."  *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788

(3d Cir. 1995).  Plaintiff argues that judicial economy favors this court's retention

of jurisdiction because this court has already ruled on motions to dismiss and

summary judgment and oversaw discovery.  (Doc. 66, p. 37.)  Plaintiff argues that

convenience weighs in favor of retaining jurisdiction because this courts has "all

but tried this matter[,]" and remanding this case to state court would not be

convenient.  (*Id.*)  Finally, Plaintiff argues fairness weighs in favor of this court

retaining jurisdiction because this will expeditiously resolve personally difficult

matters for Plaintiff.  (*Id.* at 38.)  GASD agrees that this court should exercise

supplemental jurisdiction over "Plaintiff's state negligence claim."  (Doc. 69, p.

24.)  The court agrees that judicial economy, convenience, and fairness, as detailed

by Plaintiff, weigh in favor of retaining jurisdiction over the state law claims

against Marfia.

## CONCLUSION

In conclusion, GASD's motion for summary judgment is granted.  Plaintiff's

motion for summary judgment is denied.  An order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: June 16, 2025